UNITED STATES DISTIRCT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

WEST PALM BEACH DIVISION

99-8598
CIV-FERGUSON

MAGISTRATE JUDGE
SNOW

---

RENE JOLTEUS, )
PIERRE CHARLES ABLARD, )
LUCIEN ACHILLE, )
MARIE ANDRISSE ACHILLE, )
LEMENE ADELSON, )
SIMONE ADOLPH, )
GEORGE AGENORD, )
ORASIS ALCINDER, )
WISLEY ALECTUS, )
JOSEPH ALEXANDRE, )
MERVILIEN ALFRED, )
ORALIE ALFRED, )
RESILIEN ALFRED, )
JEAN JOSEPH ALOUPTION, )
CEBIEN AMILCAR, )
ICIENNER AMILCAR, )        CIVIL ACTION
PAULETTE AMILCAR, )
SAINTERVIL AMILCAR, )
JOSEPH A. ANNASTAL, )
JOACHIN ANTOINE, )         CASE NO.
GABRIEL ARTIS, )
LIFAITE AUGUSTAVE, )
JAMES AUGUSTE, )
MARIE OLYMPIA BAPTISTE, )
MICHAUD BATHELMY, )
GUERLINE BEAUJOUR, )
CLAUDETTE BERNARD, )
DIEULA BLANC, )
ANDRE BOULIN, )
LERONE BUISSERETH, )
JEAN CALIXTE, )
VOYELLE CELA, )
FRITZ CELESTINE, )
ERNEST CELIN, )
BENICE CHARLES, )
SULTANE CHARLOT, )
JEAN E. CINEUS, )
CLERMONT CLAIRANT, )
JOSEPH D. CLAIRANT, )
FENEL CLERANT, )
TEPCY CODIO, )
ANGENOR COLAS, )
DENIS DECOSTE, )
MARIE G. DELILLE, )
ANTOINE DELVA, )

PAULETTE DERVIL,                              )
DESTINE DESPINASSE,                           )
WILSON DIROGENE,                              )
JEAN DEVALON DORVAL,                          )
PIERINNA EDOUARD,                             )
INNOCENT ELIAVON,                             )
SOLANGE ESTINFORT,                            )
VIERGELA ETIENNE,                             )
MERCIER EXANTUS,                              )
JOSEPH FERDINAND,                             )
DURA FERTIL,                                  )
LAMARRE FILS-AIME,                            )
AGOUSTO FLEURANT,                             )
CLAUDE ROSE FLEUZINORD,                       )
EXER FONROSE,                                 )
MARIE FORTUNE,                                )
FANALIE FRANCOIS,                             )
MARIE FRANCOIS,                               )
SILVERA FRANCOIS,                             )
YVES FRANCOIS,                                )
ALEXANDRE GABRIEL,                            )
DIEUJUSTE GALETTE,                            )
YVENEL GENEUS,                                )
MURATDIEU GEORGES,                            )
CHARLES PIERRE GILLES,                        )
JOSEPH E. GUE,                                )
JEAN GUERSON,                                 )
JACQUES OVIL HENRY,                           )
JOSEPH P. HONORE,                             )
YVROSE INNOCENT,                              )
SAINT JEAN ISTACHE,                           )
MERZIER JANVIER,                              )
MONIQUE JANVIER,                              )
JEROME JEAN,                                  )
OLIVE JEAN,                                   )
FALIN JEAN-BAPTISTE,                          )
JULIANNE JEAN-BAPTISTE,                       )
CHARITE JEAN-CHARLES,                         )
ROSELAINE JEAN-LOUIS,                         )
JEAN CENOT JEUNE,                             )
ANDRE JOABOAM,                                )
DICKANG JOSEPH,                               )
EDRAS JOSEPH,                                 )
JACQUELINE JOSEPH,                            )
KESNER JOSEPH,                                )
LUCIENNE JOSEPH,                              )
PAUL JOSEPH,                                  )
SYLVIO JOSEPH,                                )
MARIE C. LANE,                                )
YVETTE LAZARE,                                )
JOSEPH LEDAN,                                 )
JEAN B. LIMORZE,                              )
BENITA LINOT,                                 )
MECKEL LINOT,                                 )

```
JUDERS LOUIS,                          )
LISE LOUIS,                            )
YOLITA LOUIS,                          )
JISLAINE LOUISSAINT,                   )
JEAN E. MARCELIN,                      )
SAINT JEAN MAXY,                       )
ANITA MEDOR,                           )
CELIMENE MERAND,                       )
ROSIANE MERANE,                        )
AMALIA MILDER,                         )
MARIE ROSE MIMI,                       )
MOSELE JOSEME MOLIERE,                 )
DICADIEU MONAL,                        )
JEAN I. MORINVILLE,                    )
OLINA MORON,                           )
JOSEPH NICOLAS,                        )
JACQUES PIERRE NOEL,                   )
SOMNER NOEL,                           )
JOSEPH A. NONOMBRE,                    )
MARIE DIANA NONOMBRE,                  )
LILA NOEL-JEUNE,                       )
MONETOILLE OBNIS,                      )
PIERRE PAPILLON,                       )
WILSON PASTEUR,                        )
JOSEPH PETITHOMME,                     )
ANDRE PIERRE,                          )
ANTONIO PIERRE,                        )
ELISNA PIERRE,                         )
FIGENA PIERRE,                         )
GABRIEL PIERRE,                        )
JEAN PIERRE,                           )
JEAN MONTES PIERRE,                    )
JOCELYNE PIERRE,                       )
JOSEPH WILNER PIERRE,                  )
JULIEN PIERRE,                         )
MARCELUS PIERRE,                       )
NELIO PIERRE,                          )
ABLARD PIERRE-CHARLES,                 )
JACQUES PLACIUS,                       )
FRANCAIS PREZIL,                       )
JEAN ROBERT RAFAEL,                    )
ADAM RAYMOND,                          )
DAVID RICHE,                           )
ERZILIE RICHEMOND,                     )
JULES RICHEMOND,                       )
INOUIS ROSIUS,                         )
PERSONNE ROYAL,                        )
ROOSEVELT SAINT FELIX,                 )
ISAAC SALE,                            )
KESNEL SALOMON,                        )
CAMILIEN SILVERIN,                     )
JEANOT ST. HILAIRE,                    )
NOLDA ST. HILAIRE,                     )
PREMISE ST. HILAIRE,                   )
```

JOSEPH WILFRACE ST. JUSTE,       )
COMPAGNE ST. LOUISE,             )
MAGRE ST. PIERRE,                )
JEAN LOUIGENE TERVENUE,          )
ISMAELIE THERMIDOR,              )
ORIENTUS THERMITUS,              )
GHISLAINE TOUSSAINT,             )
MARTINO ULYSSE,                  )
YOLETTE ULYSSE and               )
CARMELO VALCIN,                  )
                                 )
     Plaintiffs,                 )
                                 )
vs.                              )
                                 )
GEORGIA GROWERS ASSOCIATION, INC.,)
SOUTHERN VALLEY FRUIT &          )
     VEGETABLE, INC.,            )
HAMILTON GROWERS, INC.,          )
GIBBS PATRICK FARMS, INC.,       )
LEWIS TAYLOR FARMS, INC., and    )
DAN BREMER,                      )
                                 )
     Defendants.                 )
_____)

### COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, INJUNCTIVE RELIEF, COSTS OF LITIGATION AND ATTORNEY'S FEE

### PRELIMINARY STATEMENT

1.  This is an action by 159 migrant and seasonal farmworkers and their farm labor contractors to secure and vindicate rights afforded them by the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§1801, et seq. ("AWPA"), the Wagner-Peyser Act, 29 U.S.C. §§49, et seq., and common law.

2.  The Plaintiffs complain of the false and misleading information the Defendants furnished regarding concerning the existence of work during the 1998 Georgia vegetable harvest.   In addition, the Plaintiffs complain of the

-4-

unlawful refusal of the Defendants to accept their respective offers to work during the 1998 Georgia vegetable harvest.

3.    The migrant farmworker plaintiffs seek money damages, declaratory relief, and injunctive relief for the Defendants' violations of their rights under the AWPA, the Wagner-Peyser Act, and common law.

4.    The farm labor contractors seek money damages, declaratory relief and injunctive relief under the Wagner-Peyser Act, Florida Statutes and common law.

## JURISDICTION

5.    This Court has jurisdiction pursuant to 29 U.S.C. §1854(a), this case arising under the AWPA; by 28 U.S.C. §1331, this action arising under the laws of the United States; and by 28 U.S.C. §1337, this action arising under Acts of Congress regulating commerce.

6.    This Court has supplemental jurisdiction over the claims arising under state law, since these claims are so related to the federal claims that they form part of the same case or controversy.

## VENUE

7.    Venue is proper in this district pursuant to 28 U.S.C. §§1391(b) and (c) and 29 U.S.C. §1854(a).

## PARTIES

8.   Plaintiffs Pierre  Charles Ablard, Lucien  Achille,
Marie Andisse Achille, Lemene Adelson, Simone Adolph, George
Agenord, Orasis Alcindor, Wisley Alectus, Joseph  Alexandre,
Oralie  Alfred,  Resilien  Alfred,  Jean  Joseph  Alouption,
Cebien Amilcar, Icienner  Amilcar, Paulette Amilcar,  Joseph
A.  Annastal,  Joachin   Antoine,  Gabriel  Artis,   Lifaite
Augustave, James  Auguste, Marie  Olympia Baptiste,  Michaud
Bathelmy,  Guerline  Beaujour,  Claudette  Bernard,   Dieula
Blanc,  Andre  Boulin,  Lerone  Buissereth,  Jean   Calixte,
Voyelle Cela, Ernest Celin, Fritz Celestine, Benice Charles,
Sultane Charlot, Jean E.  Cineus, Clermont Clairant,  Joseph
D. Clairant,  Fenel  Clerant, Tepcy  Codio,  Angenor  Colas,
Denis Decoste,  Marie G.  Delille, Antoine  Delva,  Paulette
Dervil, Destine  Despinasse, Wilson  Dirogene, Jean  Devalon
Dorval,  Pierinna   Edouard,   Innocent   Eliavon,   Solange
Estinfort, Viergela  Etienne,  Mercier  Exantus,  Joseph  C.
Ferdinand, Dura Fertil, Lamarre Fils-Aime, Agousto Fleurant,
Claude Rose Fleuzinord, Exer Fonrose, Marie Fortune, Fanalie
Francois, Marie Francois, Matyla Francois, Silvera Francois,
Yves Francois, Alexandre Gabriel, Dieujuste Galette,  Yvenel
Geneus, Muratdieu Georges, Charles Pierre Gilles, Joseph  E.
Gue, Jean  Guerson, Jacques  Ovil Henry,  Joseph P.  Honore,
Yvrose  Innocent,  Saint  Jean  Istache,  Merzier   Janvier,
Monique  Janvier,  Jerome  Jean,  Olive  Jean,   Falin
Jean-Baptiste, Julianne Jean-Baptiste, Charite Jean-Charles,
Roselaine Jean-Louis, Jean Cenot Jeune, Andre Joaboam,  Rene

Jolteus, Dickang Joseph, Edras Joseph, Jacqueline Joseph, Kesner Joseph, Lucienne Joseph, Paul Joseph, Sylvio Joseph, Marie C. Lane, Yvette Lazare, Joseph Ledan, Jean B. Limorze, Benita Linot, Meckel Linot, Juders Louis, Lise Louis, Yolita Louis, Jislaine Louissaint, Saint Jean Maxy, Anita Medor, Celimene Merand, Rosiane Merane, Amalia Mildor, Marie Rose Mimi, Mosele Joseme Moliere, Dicadieu Monal, Jean I. Morinville, Olina Moron, Joseph Nicolas, Jacques Pierre Noel, Somner Noel, Lila Noel-Jeune, Joseph A. Nonombre, Marie Diana Nonombre, Monetoille Obnis, Pierre Papillon, Wilson Pasteur, Joseph Petithomme, Andre Pierre, Antonio Pierre, Elisna Pierre, Figena Pierre, Gabriel Pierre, Jean Pierre, Jean Montes Pierre, Jocelyne Pierre, Joseph Wilner Pierre, Julien Pierre, Marcelus Pierre, Nelio Pierre, Jacques Placius, Francais Prezil, Jean Baptiste Rafael, Adam Raymond, David Riche, Erzilie Richemond, Jules Richemond, Inouis Rosius, Personne Royal, Roosevelt Saint Felix, Isaac Sale, Kesnel Salomon, Camilien Silverin, Jeanot St. Hilaire, Nolda St. Hilaire, Premise St. Hilaire, Joseph Wilfrance St. Juste, Compagne St. Louise, Magre St. Pierre, Jean Louigene Tervenue, Ismaelie Thermidor, Orientus Thermitus, Ghislaine Toussaint, Martino Ulysse, Yolette Ulysse and Carmelo Valcin (hereafter "Farmworker Plaintiffs") are residents of Belle Glade, Palm Beach County, Florida. Each of the Farmworker Plaintiffs is an adult migrant or seasonal agricultural worker within the meaning of the AWPA, 29 U.S.C. §§1802(8)(A) or (10)(A). At all times relevant to this

action, each of the Farmworker Plaintiffs was employed or actively seeking employment on a seasonal basis picking fruits or vegetables, or performing related tasks.

9. Plaintiffs Mervilien Alfred, Saintervil Amilcar and Jean Marcelin ("Crewleader Plaintiffs") are residents of Belle Glade, Florida. At all times relevant to this action, each of the Crewleader Plaintiffs was registered and acted as a farm labor contractor within the meaning of the AWPA, 29 U.S.C. §1802(7).

10. Defendant Georgia Growers Association, Inc. ("GGA") is a Georgia corporation based in Norman Park, Georgia. At all time relevant to this action, GGA was an agricultural association within the meaning of the AWPA, in that it hired, employed, furnished or transported migrant or seasonal agricultural workers. Among the members of GGA are Defendants Southern Valley Fruit and vegetable, Inc., Hamilton Growers, Inc., Gibbs Patrick Farms, Inc. and Lewis Taylor Farms, Inc. At all times relevant to this action, GGA was a joint employer within the meaning of 20 C.F.R. §655.100(b) in that it shared with its employer members the responsibility for hiring agricultural workers.

11. Defendant Southern Valley Fruit and Vegetable, Inc. ("Southern Valley") is a Georgia corporation based in Norman Park, Georgia. At all times relevant to this action, Southern Valley was an agricultural employer within the meaning of the AWPA, 29 U.S.C. §1802(2), in that it operated

-8-

a farm and recruited, solicited, hired or employed migrant or seasonal agricultural workers.

12. Defendant Hamilton Growers, Inc. ("Hamilton") is a Georgia corporation based in Norman Park, Georgia. At all times relevant to this action, Hamilton was an agricultural employer within the meaning of the AWPA, 29 U.S.C. §1802(2), in that it operated a farm and recruited, solicited, hired or employed migrant or seasonal agricultural workers.

13. Defendant Gibbs Patrick Farms, Inc. ("Gibbs Patrick") is a Georgia corporation based in Omega, Georgia. At all times relevant to this action, Gibbs Patrick was an agricultural employer within the meaning of the AWPA, 29 U.S.C. §1802(2), in that it operated a farm and recruited, solicited, hired or employed migrant or seasonal agricultural workers.

14. Defendant Lewis Taylor Farms, Inc. ("Lewis Taylor") is a Georgia corporation based in Tifton, Georgia. At all times relevant to this action, Lewis Taylor was an agricultural employer within the meaning of the AWPA, 29 U.S.C. §1802(2), in that it operated a farm and recruited, solicited, hired or employed migrant or seasonal agricultural workers.

15. Defendant Dan Bremer is a resident of Branson, Missouri. At all times relevant to this action, Bremer was registered and acted as a farm labor contractor within the meaning of the AWPA, 29 U.S.C. §102(7) in that for money or

other valuable consideration, he recruited, hired or furnished migrant or seasonal agricultural workers.

## THE 1998 GEORGIA VEGETABLE HARVEST

16. Prior to the beginning of the 1998 Georgia vegetable harvest, Defendants Southern Valley, Hamilton, Gibbs Patrick and Lewis Taylor contracted with Georgia Growers Association for its assistance in recruiting, soliciting and hiring to meet their harvest needs for the upcoming harvest season. The GGA performed these services through farm labor contractor Bremer.

17. In order to meet their manpower needs, Southern Valley, Hamilton Growers, Gibbs Patrick and Lewis Taylor sought temporary labor certification from the United States Department of Labor for the admission of 675 foreign workers in accordance with the Immigration and Nationality Act, 8 U.S.C. §1186. The temporary labor certification application was filed on behalf of Southern Valley, Hamilton, Gibbs Patrick and Lewis Taylor by Defendants Georgia Growers Association and Bremer, acting as the agents for and joint employer with these growers.

18. As part of their temporary labor certification application, the Defendants filed a job offer on Form ETA-790 for recruitment of both domestic and foreign workers. 20 C.F.R. §655.101(b)(1). The job offer, or "clearance order," was filed in January, 1998 and sought 675 workers for a period of employment extending from March 8

-10-

through July 31, 1998. The clearance order was used for the recruitment of U.S. workers, in accordance with 20 C.F.R. §655.102(b)(1). The clearance order was also used by the Defendants to satisfy the disclosure requirements of the Migrant and SEasonal Agricultural Worker Protection Act, 29 U.S.C. §§1821(a) and 1831(a).

19. The Defendants' clearance order contained a number of assurances to prospective employees, including the following:

      a. **Equivalent treatment of U.S. and alien workers** U.S. workers would be offered at least the same opportunities, wages, benefits, and working conditions as those offered to nonimmigrant foreign workers.

      b. **Compliance with applicable federal regulations** The employers would abide by the assurances specified in the conditions of 20 C.F.R. Part 655. By this assurance, the Defendants expressly agreed to comply with 20 C.F.R. §655.102(d), relating to positive recruitment, 20 C.F.R. §655.102(b)(5)(i), relating to transportation advances, and 20 C.F.R. §655.102(f), relating to use of and compensation to be paid to farm labor contractors.

20. A copy of the Defendants' clearance order is attached to this Complaint.

21.   The  Defendants' clearance order  was accepted  for consideration by the  Regional Administrator  of the  United States Department of  Labor.  In accordance  with 20  C.F.R. §655.105(a), the  clearance  order was  transmitted  to  the Florida Department of Labor as part of the effort to recruit U.S. workers to  fill the  manpower needs  reflected in  the clearance order.

22.   In  accordance  with  20  C.F.R.  §105(a),  the Defendants were directed  by the  Regional Administrator  to engage in positive recruitment efforts  in Florida, including radio advertising in areas of the state heavily populated by farmworkers.

## COUNT I

### (Migrant and Seasonal Agricultural Worker Protection Act)

23.    This count sets forth a claim by the Farmworker Plaintiffs for damages, injunctive relief and declaratory relief for the Defendants' violations of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. §§1801, et seq., and its implementing regulations during the 1998 Georgia vegetable season.

24.    The Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 22 of this Complaint.

25.    While searching for employment for their respective farm labor crews, Plaintiffs Mervilien Alfred, Saintervil Amilcar and Jean Marcelin ("the Crewleader Plaintiffs") contacted the Belle Glade office of the Job Service of Florida.    At the Belle Glade Job Service office, the Crewleader Plaintiffs learned of the availability of employment with the Defendants through review of the Defendants' clearance order.

26.    Each of the Crewleader Plaintiffs sought to apply for positions as a farm labor contractor with the Defendants and to recruit workers to fill the manpower requirements of the clearance order.    In anticipation of being hired in these positions, the Crewleader Plaintiffs each recruited a sizeable number of U.S. workers to be furnished to the Defendants, including each of the Farmworker Plaintiffs.

-13-

These U.S. workers relied on the Crewleader Plaintiffs to secure employment for them and to arrange transportation to any distant jobsite.

27. In March, 1998, at the Belle Glade Job Service office, the Crewleader Plaintiffs formally applied to the Defendants for positions for themselves and their respective labor crews, in accordance with 20 C.F.R. §653.501(d)(2)(v) and 20 C.F.R. §655.106(b). At the time they applied for these positions, the Crewleader Plaintiffs submitted lists of their crewmembers, including each worker's name, address and Social Security account number. Each of the Farmworker Plaintiffs was identified on these lists.

28. In his application to the Defendants, Mervilien Alfred listed the U.S. workers he had recruited for the Defendants' job, including Farmworker Plaintiffs Pierre Charles Ablard, Simone Adolph, Orasis Alcindor, Wisley Alectus, Joseph Alexandre, Oralie Alfred, Resilien Alfred, Joachin Antoine, Gabriel Artis, Lifaite Augustave, Guerline Beaujour, Joseph D. Clairant, Tepcy Codio, Angenor Colas, Paulette Dervil, Destine Despinasse, Wilson Dirogene, Innocent Eliavon, Viergela Etienne, Mercier Exantus, Dura Fertil, Agousto Fleurant, Claude Rose Fleuzinord, Matyla Francois, Silvera Francois, Yves Francois, Alexandre Gabriel, Muratdieu Georges, Charles Pierre Gilles, Merzier Janvier, Julianne Jean-Baptiste, Charite Jean-Charles, Jacqueline Joseph, Lucienne Joseph, Paul Joseph, Sylvio Joseph, Yvette Lazare, Jean B. Limorze, Lise Louis, Saint

-14-

Jean Maxy, Anita Medor, Dicadieu Monal, Jacques Pierre Noel, Somner Noel, Lila Noel-Jeune, Pierre Papillon, Wilson Pasteur, Antonio Pierre, Gabriel Pierre, Julien Pierre, Jacques Placius, Jean Baptiste Rafael, Erzilie Richemond, Jules Richemond, Inouis Rosius, Compagne St. Louise, Magre St. Pierre and Orientus Thermitus.

29. In his application to the Defendants, Saintervil Amilcar listed the U.S. workers he had recruited for the Defendants' job, including Farmworker Plaintiffs George Agenord, Icienner Amilcar, Paulette Amilcar, Joseph A. Annastal, Marie Olympia Baptiste, Michaud Bathelmy, Claudette Bernard, Dieula Blanc, Fritz Celestine, Jean E. Cineus, Clermont Clairant, Fenel Clerant, Marie G. Delille, Jean Devalon Dorval, Pierinna Edouard, Solange Estinfort, Lamarre Fils-Aime, Exer Fonrose, Yvenel Geneus, Jacques Ovil Henry, Joseph P. Honore, Olive Jean, Andre Joaboam, Dickang Joseph, Marie C. Lane, Joseph Ledan, Benita Linot, Meckel Linot, Yolita Louis, Rosiane Merane, Marie Rose Mimi, Joseph Nicolas, Marie Diana Nonombre, Monetoille Obnis, Joseph Petithomme, Andre Pierre, Figena Pierre, Jean Pierre, Joseph Wilner Pierre, Marcelus Pierre, Francais Prezil, Adam Raymond, David Riche, Personne Royal, Kesnel Salomon, Camilien Silverin, Jeanot St. Hilaire, Nolda St. Hilaire, Premise St. Hilaire, Joseph Wilfrance St. Juste, Ismaelie Thermidor and Carmelo Valcin.

30. In his application to the Defendants, Jean Marcelin listed the U.S. workers he had recruited for the Defendants'

job, including Farmworker Plaintiffs Lucien Achille, Marie Andisse Achille, Lemene Adelson, Jean Joseph Alouption, Cebien Amilcar, James Auguste, Andre Boulin, Lerone Buissereth, Jean Calixte, Voyelle Cela, Ernest Celin, Benice Charles, Sultane Charlot, Denis Decoste, Antoine Delva, Joseph C. Ferdinand, Marie Fortune, Fanalie Francois, Marie Francois, Dieujuste Galette, Joseph E. Gue, Jean Guerson, Yvrose Innocent, Saint Jean Istache, Monique Janvier, Jerome Jean, Falin Jean-Baptiste, Roselaine Jean-Louis, Jean Cenot Jeune, Rene Jolteus, Edras Joseph, Kesner Joseph, Juders Louis, Jislaine Louissaint, Celimene Merand, Amalia Mildor, Mosele Joseme Moliere, Jean I. Morinville, Olina Moron, Joseph A. Nonombre, Elisna Pierre, Jean Montes Pierre, Jocelyne Pierre, Nelio Pierre, Roosevelt Saint Felix, Isaac Sale, Jean Louigene Tervenue, Ghislaine Toussaint, Martino Ulysse and Yolette Ulysse.

31. In March, 1998, interviews were arranged at the Belle Glade Job Service office between the Crewleader Plaintiffs and Defendant Bremer, acting as the hiring agent for GGA, Southern Valley, Hamilton, Gibbs Patrick and Lewis Taylor. In these interviews, each of the Crewleader Plaintiffs advised Bremer that he was applying for the position on behalf of himself and his crew of U.S. workers.

32. During the interviews, Bremer informed the Crewleader Plaintiffs that the Defendants did not wish to hire farm labor contractors and would pay only a nominal fee to the Crewleader Plaintiffs for their services in

-16-

recruiting and furnishing the members of their respective crews. This fee was substantially less than the Defendants paid for the recruitment of the H-2A workers hired for these jobs.

33. Because the fee offered them by Bremer for recruiting and furnishing U.S. workers was so minimal and well below the prevailing override paid farm labor contractors in Georgia furnishing labor for similar crops, the Crewleader Plaintiffs determined that it was economically infeasible for them to accept positions with the Defendants.

34. The Defendants refused to provide transportation from Belle Glade to the jobsite for the Farmworker Plaintiffs who sought to apply for the jobs through the Crewleader Plaintiffs. This forced the Farmworker Plaintiffs to rely on the Crewleader Plaintiffs to secure employment and arrange transportation for them. Because the Defendants failed to offer anything more than a nominal override to the Crewleader Plaintiffs, the Farmworker Plaintiffs were unable to travel to Georgia to work for the Defendants.

35. The Defendants' clearance order constituted a working arrangement between them and the Farmworker Plaintiffs within the meaning of the AWPA, 29 U.S.C. §§1822(c) and 1832(c), and its implementing regulations, 29 C.F.R. §500.72.

-17-

36.   Contrary to the assurances set forth in their clearance order, the Defendants failed to make the same kind and degree of recruitment efforts with regard to the Farmworker Plaintiffs and other U.S. workers that the Defendants made to obtain temporary foreign workers.   While they expended substantial sums to employ a hiring agent and other recruiters who travelled to the home areas of temproary foriegn workers in Mexico, the Defendants refused to pay comparable sums to recruiters of U.S. workers, such as the Crewleader Plaintiffs.   In addition, the Defendants refused to travel to Florida and other locations which have historically served as sources of U.S. workers for the Georgia vegetable harvest.

37.   Contrary to the assurances set forth in the Defendants' clearance order, the Farmworker Plaintiffs were not offered benefits, wages and working conditions at least as favorable as the Defendants offered to their temporary foreign workers.   Among other things, the Defendants did not offer the Farmworker Plaintiffs the opportunity to obtain positions and transportation through supervisors and recruiters paid a fee commensurate with that the Defendants paid the supervisors and recruiters of the temporary foreign workers.

38.   Contrary to the assurances set forth in the their clearance order, the Defendants failed to engage in positive recruitment of U.S. workers to an extent no less than that of agricultural employers in the area who did not use

temporary foreign workers. The Defendants undertook extensive efforts to recruit temporary foreign workers from Mexico, including substantial payments to a hiring agent and local recruiters to identify and hire Mexican workers. By contrast, the Defendants refused to offer comparable payments to the Crewleader Plaintiffs to recruit and furnish the Farmworker Plaintiffs.

39.    Although it is the prevailing practice of vegetable growers in south Georgia who do not employ temporary foreign workers to secure U.S. workers through farm labor contractors, the Defendants failed to offer to the Crewleader Plaintiffs an override no less than that being provided by these other area growers. As a result, the Crewleader Plaintiffs were economically unable to accept the Defendants' job offer, and the Farmworker Plaintiffs, who relied on the Crewleader Plaintiffs to secure and transport them to the jobsite, were unable to obtain jobs with the Defendants.

40.    Although they advanced transportation costs to certain of its temporary foreign workers, the Defendants refused to offer transportation advances to the Farmworker Plaintiffs.

41.    As set out in paragraphs 36, 37, 38, 39 and 40, the Defendants knowingly provided false or misleading to the Farmworker Plaintiffs concerning the terms, conditions or existence of employment, in violation of the AWPA, 29 U.S.C.

§§1821(f) and 1831(e), and its implementing regulations, 29 C.F.R. §500.77.

42. By their actions set out in paragraphs 36, 37, 38, 39 and 40, the Defendants violated without justification their working arrangement with the Farmworker Plaintiffs, thereby violating the AWPA, 29 U.S.C. §1822(c) and 1832(c), and its implementing regulations, 29 C.F.R. §500.72.

43. The Defendants' violations of the AWPA as set forth in this count were the natural consequence of the Defendants' conscious or deliberate actions and were intentional within the meaning of the AWPA, 29 U.S.C. §1854(c)(1).

44. As a result of the Defendants' violations of the AWPA and its attendant regulations as set forth in this count, ther Farmworker Plaintiffs have suffered damages.

## COUNT II

### (Wagner-Peyser Act)

45. This count sets forth a claim by the Farmworker Plaintiffs for damages, injunctive relief and declaratory relief for the Defendants' violations of the Wagner-Peyser Act and its implementing regulations.

46. The Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 44 of this Complaint.

47. The Defendants violated the Wagner-Peyser Act, 29 U.S.C. §§49, et seq., and its implementing regulations, 20 C.F.R. §§653.501, et seq., by failing to provide employment to the Farmworker Plaintiffs conforming to the terms, conditions and assurances contained in the Defendants' clearance order, as described in paragraphs 36, 37, 39, 39 and 40.

48. As a result of the Defendants' violations of the Wagner-Peyser Act and its implementing regulations, the Farmworker Plaintiffs have suffered damages.

## COUNT III

### (Wagner-Peyser Act)

49.  This count sets forth a claim by the Crewleader Plaintiffs for damages, injunctive relief and declaratory relief for the Defendants' violations of the Wagner-Peyser Act and its implementing regulations.

50.  The Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 48 of this Complaint.

51.  Despite the fact that the prevailing practice among south Georgia vegetable growers who do not employ temporary foreign workers to secure U.S. workers through farm labor contractors, the Defendants failed to offer to the Crewleader Plaintiffs an override no less than that being provided by these other area growers.

52.  Contrary to the assurances in their clearance order, the Defendants did not make the same kind and degree of recruitment efforts to secure U.S. workers as it made to obtain temporary foreign workers.  Among other things, the Defendants paid substantial sums to its hiring agent and other recruiters to locate and hire temporary foreign workers while refusing to offer the Crewleader Plaintiffs in excess of $8 for each U.S. worker recruited.  In addition, the Defendants paid a substantial salary to its recruiters who assisted in the on-site supervision of the temporary foreign workers, while refusing to offer any payment to the

Crewleader Plaintiffs for on-site supervision of any U.S. workers they would recruit and furnish to the Defendants.

53. The Defendants violated the Wagner-Peyser Act, 29 U.S.C. §§49, et seq., and its implementing regulations, 20 C.F.R. §§653.501, et seq., by failing to provide employment to the Crewleader Plaintiffs conforming to the terms, conditions and assurances contained in the Defendants' clearance order, as described in paragraphs 36, 37, 38, 39, 51 and 52.

54. As a result of the Defendants' violations of the Wagner-Peyser Act and its implementing regulations, the Crewleader Plaintiffs have suffered damages.

## COUNT IV

### (Concerted Fail to Deal)

55. This count sets forth a claim by the Crewleader Plaintiffs for damages for the Defendants' tortious concerted failure to deal with the Crewleader Defendants.

56. The Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 54 of this Complaint.

57. The Defendants wantonly and maliciously combined and conspired with one another to refuse to engage the services of farm labor contractors, including the Crewleader Plaintiffs, to supply labor for the 1998 harvest.

58. In furtherance of this combination and conspiracy, the Defendants, without cause or justification, willfully, wantonly and maliciously undertook the following concerted, overt acts:

a. The Defendants paid substantial sums to its hiring agent and other recruiters to locate and hire temporary foreign workers while refusing to offer the Crewleader Plaintiffs in excess of $8 for each U.S. worker recruited, amking it economically infeasible for the Crewleader Plaintiffs to recruit and hire U.S. workers for the Defendants;

b. The Defendants paid a substantial salary to its recruiters who assisted in the on-site supervision of the temporary foreign workers, while refusing to offer any payment to the Crewleader Plaintiffs for on-site supervision of any U.S. workers they would recruit and furnish to the Defendants; and

c. Even though federal law and the terms of their clearance order required the Defendants to offer the Crewleader Plaintiffs an override for

their services no less than that being provided by these other area growers who did not use H-2A workers, the Defendants refused to offer such an override to the Crewleader Plaintiffs. The Defendants refused to offer the Crewleader Plaintiffs any sum in excess of $8 per worker for their services as farm labor contractors.

59. The concerted actions of the Defendants in furtherance of the combination and conspiracy have caused extensive hardship to the Crewleader Plaintiffs.

60. As a result of the tortious concerted refusal to deal by the Defendants, the Crewleader Plaintiffs have suffered damages.

## COUNT V

### (Wrongful Combination Against Workers)

61.   This count sets forth a claim by the Crewleader Plaintiffs for damages for the Defendants' wrongful conspriace, combination and confederation against the Crewleader Defendants.

62.   The Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 60 of this Complaint.

63.   By their actions set out in paragraph 58, the Defendants agreed, conspired, combined or confederated together for the purpose of preventing the Crewleader Plaintiffs from procuring work on the Defendants' operations, in violation of Fla. Stat. §448.045.

64.   As a result of the wrongful combination by the Defendants as described in this count, the Crewleader Plaintiffs have suffered damages.

## COUNT VI

### (Contract)

66.  This count sets forth a claim by the Plaintiffs for damages for the Defendants' breaches of their common law contracts with the Plaintiffs.

67.  The Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 65 of this Complaint.

68.  The Defendants' clearance order constituted a binding offer of employment which the Plaintiffs accepted by formally applying for the jobs in accordance with the clearance order's directions and affirmatively indicating their willingness to accept the employment as described in the clearance order.

69.  When the Crewleader Plaintiffs applied to the Defendants on behalf of themselves and the Farmworker Plaintiffs and affirmatively indicated their willingness to accept the employment described in the clearance order, binding contracts between the Plaintiffs and the Defendants, the terms of which are set forth in the clearance order.

70.  By their actions described in paragraphs 36, 37, 38, 39, 40, 51 and 52, the Defendants breached their common law contracts with the Plaintiffs.

71.  As a result of the Defendants' breaches of these employment contracts, the Plaintiffs have suffered damages.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs pray that this Court will enter an order:

(a) Declaring that the Defendants have intentionally violated the AWPA and its implementing regulations, as set forth in Count I;

(b) Declaring that the Defendants have violated the Wagner-Peyser Act and its implementing regulations, as set forth in Counts II and III;

(c) Awarding each of the Farmworker Plaintiffs his or her actual damages or statutory damages of $500, whichever is greater, for each violation of the AWPA and its attendant regulations as set forth in Count I;

(d) Awarding each of the Farmworker Plaintiffs his or her actual and consequential damages for the Defendants' violations of the Wagner-Peyser Act and its implementing regulations, as set forth in Count II;

(e) Awarding each of the Crewleader Plaintiffs his actual and consequential damages for the Defendants' violations of the Wagner-Peyser Act and its implementing regulations, as set forth in Count III;

(f) Awarding each of the Crewleader Plaintiffs his actual and consequential damages for the Defendants' tortious concerted refusal to deal, as set forth in Count IV;

(g) Awarding each of the Crewleader Plaintiffs his actual and consequential damages for the Defendants' wrongful combination in violation of Fla. Stat. §448.045, as set forth in Count V;

(h) Awarding each of the Plaintiffs his or her actual and consequential damages for the Defendants' contractual breaches, as set forth in Count VI;

(i) Permanently enjoing the Defendants from further failure to comply with the AWPA and the Wagner-Peyser Act;

(j) Awarding the Plaintiffs the costs of this action;

(k) Awarding the Plaintiffs a reasonable attorney's fee, in accordance with Fla. Stat. §448.08; and

(l) Granting such further relief as is just and equitable.

Respectfully submitted,

Gregory S. Schell
Florida Bar Number 287199
Migrant Farmworker Justice Project
Florida Legal Services, Inc.
Post Office Box 2110
Belle Glade, Florida  33430-7110
Telephone:  (561) 996-5266
Facsimile:  (561) 992-5040

exchange, that is, as a forum for bringing together employers and job seekers, neither the ~~~ nor the State ~~~ agencies, are guarantors of the accuracy or truthfulness of information contained on job orders submitted by employers. Nor does any job order accepted or recruited upon by the ES consitute a contractual job offer to which ETA or a State agency is in any way a party.

ETA(ES) LMI-ET SD Docket 0805/7899  Page 31 of 52

| 1. Industry Code | 2. Job Order Number | 3. Occupational Title and Code |
|---|---|---|
| 0161 | | |

| 4. Employer's Name and Address (Number, Street, City, State, ZIP Code and Telephone Number) Georgia Growers Association, Inc. | 5. Anticipated Period of Employment | |
|---|---|---|
| 2775 Ellenton-Norman Park Road | From: 3-08-98 | To: 7-31-98 |
| Norman Park, Ga 31771 | 6. Clearance Order Issue Date | Job Order Expiration Date |

| 7. Preferred Crew Leader/Worker's Name and Address N/A | Social Security Number N/A | Leader's Functions | | | 8. No. & Type of Workers Requested |
|---|---|---|---|---|---|
| | | | Yes | No | |
| | | Supervises | ☐ | ☐ | |
| | Telephone Number | Transports | ☐ | ☐ | Total Number 675 |
| | | Pays | ☐ | ☐ | No. Individual 675 |
| | | Assumes OASI | ☐ | ☐ | No. Family |

**9. Wage Rates, Special Pay Information and Deductions**

| Crop Activity | Flat Rate (i.e., hr. wk.) | Piece Rate | Unit | Est. Hourly Rate Equiv. | C /L Wage Rate | 10. Anticipated Hrs. of Work |
|---|---|---|---|---|---|---|
| See Attached | | | | | | Per Week 40 |

Normal Hours Per Day

| | | | |
|---|---|---|---|
| Sun | 0 | | |
| Mon | 7 | Thur | 7 |
| Tue | 7 | Fri | 7 |
| Wed | 7 | Sat | 5 |

(See attachment no. _____ )

**11. Job Specifications (If additional space is needed, please use separate sheet of paper or reverse of form)**
The activities under this job offer are cultivating, transplanting, stringing and unstringing, harvesting, grading, packing, loading, pulling and irrigating peppers, onions, cucumbers, eggplant, cabbage, tomatoes, greens(collards, kale, flat and curly leaf mustards and turnips). Other activities include cropping, putting in and taking out tobacco; baling straw. Planting, harrowing, fertilizing, spraying, plowing and harvesting soybeans, corn, cotton and wheat.
(See attachment no. _____

| 12. Location and Direction to Work Site | 13. Board Arrangements |
|---|---|
| See Attached | See Attached |
| (See attach. no. I ) | (See attachment no. 1E ) |

**14. Location and Description of Housing**

See Attached

| | Number and Capacity of Housing Units | | | | |
|---|---|---|---|---|---|
| | Barracks | | Family Units | | Single Rooms |
| | No. | Total Cap. | No. | Total Cap. | No. | Total Cap. |
| | 14 | 522 | | | 55 | 325 |

Employer assures the availability of no cost or public housing which meets the full set of applicable standards. (See attach. no. 1B )

Authorized Capacity

| 15. Referral Instructions | 16. Collect Calls Accepted | Yes | No |
|---|---|---|---|
| Contact Charaman Campbell | | | |
| Ag Programs Coordinator, Associate (See attach. no. 3I ) | By Employer | ☐ | ☒ |
| (404) 656-3164 | By Order Holding Office | ☐ | ☒ |

| 17. Transportation Arrangements | 18. Distribution of Clearance Order |
|---|---|
| See Attached | |
| (See attach. no. 1F ) | |

| 19. Address of Order Holding Office (Include Telephone Number) | 20. Employer's Certification: This job order describes the actual terms and conditions of the employment being offered by me and contains all the material terms and conditions of the job. |
|---|---|
| Georgia Department of Labor | |
| 148 International Blvd., NE, Room 450 | Signature |
| Atlanta, GA 30303 | W. J. Grimes |
| Name of Agency Representative (Include Telephone Number) | Title |
| Laura Ussery | W.J. Grimes |
| Charaman Campbell (404) 656-3164 | President |

son are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. Public reporting  ~den for this collection of information is estimated to average 1 hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Employment Service, U.S. Department of Labor, Room N-4456, Washington, D.C. 20210 (Paperwork Reduction Project 1205-0134).

1.    Contents of Job Offers and Assurances

A.    Equivalent Treatment of U.S. and Alien Workers

The employer will offer U.S. workers at least the same
opportunities, wages, benefits, and working conditions as
those which the employer offers or intends to offer to non-
immigrant foreign workers.  The employer will furnish a copy
of the work contract with the employment application.

Association:

Georgia Growers Association, Inc.
2775 Ellenton-Norman Park Road
Norman Park, GA 31771
Telephone: (912) 769-3676

The worker may be assigned to any grower who is a member of
the Georgia Grower Association, Inc.  The worker may be
assigned to more than one grower during the contract period,
solely at the option of the Georgia Growers Association,
Inc.  The worker will be informed, prior the beginning of
work, as to the specific grower who will their employer.
Workers will not be employed by any employer who is not a
member of the Georgia Growers Association, Inc. at the time
of their employment.

B.    Housing

Housing is provided at no cost to workers who are not
reasonably able to return the same day to their place of
residence.  Housing is not provided to non-workers unless it
is the prevailing practice to do so.  No charge will be made
for beds or cooking utensils and similar items furnished to
workers to whom housing is provided hereunder unless
unlawfully removed or damaged beyond normal wear and tear.
Housing includes free kitchen facilities or meals will be
provided at a cost of $7.41 per day depending on location.
The kitchen and other common areas will be shared.  Housing
provided will be shared without regard to sex.  In the event
that a female is hired, separate toilet facilities shall be
provided by the employer.

Workers who reside in such housing agree to be responsible
for maintaining the housing in a neat and clean manner.
Before occupancy, housing shall be in compliance with OSHA
housing standards.  Workers residing in the housing will be
responsible for maintaining these compliance standards.  If
there is a problem with the housing, it is the worker's
responsibility to mention it to the employer.

Reasonable repair costs of damages or loss of property,
other than that caused by normal wear and tear, will

1

individual d_ 'the damages. The employe_ will deduct repair necessary so that such deductions will not result in a worker's wages going below the federal minimum wage.

The employer retains possession and control of the housing premises at all times and workers, if provided housing under the terms of the work contract, shall vacate the housing promptly upon termination of employment.

Workers residing in employer's housing may have mail directed to them at the employer's address on attached ETA 790. Workers will be provided a telephone number where they may be contacted in case of emergency while residing in the housing. The employer will not accept collect calls.

Housing varies according to location. The worker may be housed in any approved housing of any member of the Georgia Grower Association, Inc., solely at the discretion of the Georgia Growers Association, Inc.

## C. Workers' Compensation

Workers' compensation or equivalent insurance will be provided at no cost to all workers in the occupation for which workers are being sought.

## D. Employer Provided Items

The employer will provide all supplies and equipment required in the performance of the specified work free of charge. The employer will charge the worker for reasonable cost related to the worker's refusal or negligent failure to return any property furnished by the employer or due to such worker's willful damage or destruction of such property.

## E. Meals

Depending on location, the employer will furnish meals at a cost of $7.41 per day or free cooking and kitchen facilities to those workers who are entitled to live in the employer's housing, so the workers may prepare their own meals. Workers will buy their own groceries. Once a week, the employer will offer to those workers who wish to participate, free transportation to and from town where there are shopping stores, a post office and pay telephone.

## F. Transportation

The employer will not advance transportation and subsistence costs to worker for transportation to the place of employment. The employer will not repay transportation for workers that do not have legal, suitable documents to comply with IRCA, are discharged for lawful job-related reason, apply for employment knowingly unable to perform the job activities, or who abandon employment. This applies only to

2

After fifty percent of the employment period is complete, the employer will reimburse the worker for reasonable cost of transportation and subsistence from the place of recruitment to the grower's location.

Upon completion of the employment period, the employer will pay for worker's reasonable cost of return transportation and subsistence to the place of recruitment, except when the worker will not be returning to the place of recruitment due to subsequent employment with another employer who agrees to pay such costs, the employer only pays for the transportation to the next job.

The amount of such transportation payment will be equal to the worker's actual transportation costs not to exceed the most economical and reasonable common carrier transportation charges for the distance involved.  In lieu of transportation payments to workers, the employer reserves the right to charter or otherwise arrange to provide transportation.  If the employer arranges transportation, and the worker does not use that transportation, the worker will be reimbursed only for the cost of the employer arranged transportation.  Employees eligible for reimbursement under the program will be provided subsistence reimbursement.

The employer will provide transportation and subsistence under this agreement to workers that are terminated resulting from reasons beyond the employer's control or Acts of God which makes fulfillment of this contract impossible or if the worker is displaced by a U.S. worker under the 50 percent rule.

This benefit does not apply to workers who voluntarily quit employment before the end of the contract or who are terminated for cause, provided the employer notifies the Georgia Department of Labor of such action.

The employer will offer free transportation for workers from the employer's housing to the daily work site.  The use of the transportation by the worker is voluntary, and no worker will be required as a condition of employment to utilize the transportation offered by the employer.

Once a week, the employer will offer to provide free transportation to and from town where there are shopping stores, a post office and pay telephone.

G.    Three-fourths Guarantee

The employer guarantees the worker an opportunity to work for at least three-fourths of the number of hours in the work days during the period of the contract and all

3

at the place of employment until the expiration date of the work contract. The offer of employment expires as of the date specified on the work contract and any extension. For the purpose of the 3/4 guarantee, a workday consists of seven hours Monday-Friday and five hours on Saturday.

If the workers are not offered the opportunity to work for three-fourths of such hours during this period, then the employer will supplement the pay of the workers as though the worker had actually worked. If the worker is paid on a piece rate or other similar incentive system, the worker's average hourly piece rate earning (if higher than the AEWR) will be used in determining the amount due under this guarantee.

If the employer fails to notify the order holding office at least 10 working days prior to the original date of need, the employer will provide workers referred through the Agricultural Recruitment System a full week's work (as stated on the ETA 790) the week beginning with the anticipated date of need. For this situation, the employer will pay eligible workers referred through the interstate clearance system the AEWR for the first week starting with the original anticipated date of need. However, the employer may require the workers to perform alternative work (general farm labor and maintenance activities) if the guarantee cited is invoked. If the worker fails to notify the order holding office of continued interest in the job no sooner than nine working days and no later than five days before the date of need, the worker will be disqualified from the above mentioned assurance.

The three-fourths guarantee and transportation reimbursements shall be void from the beginning should the worker voluntarily abandon employment before the end of the contract period or the worker is terminated for a lawful job-related reason.

The three-fourths guarantee will not apply to any H-2A worker who may be displaced by a U.S. worker under the fifty-percent rule.

## H. Records, Earnings Statement and Deductions

The employer will keep and maintain adequate and accurate payroll and supporting records in accordance with the provisions of 20 CFR 655.102(b)(7).

Each payday the employer will furnish to the worker one or more written statements showing name and payroll identification number; work starting and ending time; hours worked including hours offered and hours actually worked; reasons employee did not work when work was offered; hourly rate or piece rate (if piece rate, the number of units

4

deductions; a net payment.

The employer will make the following deductions from the worker's wages FICA taxes and federal income tax as required by law, cash advances and repayment of loans, repayment of overpayment of wages to the worker, payment for articles which the worker has voluntarily purchased from the employer, long distance telephone charges attributed to a worker, recovery of any loss to the employer due to the worker's damage (beyond normal wear and tear) or loss of equipment or damage to housing where it is shown that the worker is responsible and any other deduction expressly authorized by the worker in writing.

## I.    Rates of Pay

This is a piece rate job with a minimum guarantee.  Workers are guaranteed that their total earning will be at least the AEWR ($6.30) for all hours worked in the payroll period.  If the USDOL promulgates a new AEWR, it will become the guaranteed wage rate as of the published (effective) date.

| Activity | Piece Rate | Unit | Estimated Hourly Rate Equivalent |
|---|---|---|---|
| Harvesting | | | |
| Pepper | | | $6.30 |
| Bell and Cubanelle | $ 0.50 | 10 gallon bucket | $6.30 |
| Long hot, Hotwax and Hunky | $ 1.00 | 10 gallon bucket | $6.30 |
| Jalapeno | $ 1.50 | 5 gallon bucket | $6.30 |
| Cucumber | $ 0.35 | 5 gallon bucket | $6.30 |
| Squash | | | |
| Yellow or Zucchini | $ 0.60 | 10 gallon bucket | $6.30 |
| Eggplant | $ 0.45 | 10 gallon bucket | $6.30 |
| Cabbage (pick & field pack) | $ 0.55 | 50 pound box | $6.30 |
| Cabbage (cut in field) | $ 0.20 | 50 pound box | $6.30 |
| Tomatoes | $ 0.60 | 5 gallon bucket | $6.30 |
| Greens (rubber band & twist tie) | $ 0.55 | 1 1/3 bushel | $6.30 |
| Greens (by dozen) | $ 1.00 | 5 pound bunch | $6.30 |
| Cantaloupe | $ 0.03 | each | $6.30 |
| Salad Onion | $ 2.25 | box | $6.30 |
| Pine Straw | $ 0.65 | bale | $6.30 |
| Pecans | $ 0.10 | pound | $6.30 |
| Harvesting, Packing and Loading | | | |
| Pepper* | | | |
| Bell | $1.00 | 1 1/9 bushel | $6.30 |
| Squash* | $1.20 | 3/4 bushel | $6.30 |
| Eggplant* | $1.15 | 1 1/9 bushel | $6.30 |
| Wash, Pack and Wrap | | | |

5

Packing

| | | | |
|---|---|---|---|
| Squash | $ 0.30 | 1 1/9 bushel box | $6.30 |
| Pepper (place pack) | $ 0.30 | 1 1/9 bushel box | $6.30 |
| Pepper Jalapeno, Hunky, and Cubanelle | $ 0.25 | ½ bushel | $6.30 |
| Cucumber(place pack) | $ 0.30 | 36 count box | $6.30 |
| Cabbage* (pack on line) | $ 0.30 | 50 pound box | $6.30 |
| Greens (rubber band and twist tie) | $ 0.12 | 1 1/3 bushel | $6.30 |
| Greens (by dozen) | $ 0.20 | 5 pound bunch | $6.30 |

Field Load

| | | | |
|---|---|---|---|
| Greens (rubber band and twist tie) | $ 0.10 | 1 1/3 bushel | $6.30 |
| Greens (by dozen) | $ 0.15 | 5 pound bunch | $6.30 |

Transplanting

| | | | |
|---|---|---|---|
| Cabbage | $ 1.10 | 100 foot row | $6.30 |
| Pepper | $ 0.90 | 100 foot row | $6.30 |
| Eggplant | $ 0.45 | 100 foot row | $6.30 |
| Squash | $ 0.55 | 100 foot row | $6.30 |
| Cucumber | $ 0.90 | 100 foot row | $6.30 |

Stringing

| | | | |
|---|---|---|---|
| Pepper (3 string) | $ 0.50 | 100 foot row | $6.30 |
| Eggplant (2 string) | $ 0.40 | 100 foot row | $6.30 |
| Tomatoes (2 string) | $ 0.40 | 100 foot row | $6.30 |
| Cucumber (2 string) | $ 0.40 | 100 foot row | $6.30 |

Unstringing

| | | | |
|---|---|---|---|
| Pepper | $ 0.30 | 100 foot row | $6.30 |
| Cucumber | $ 0.30 | 100 foot row | $6.30 |

Unstringing & Cutting Back

| | | | |
|---|---|---|---|
| Eggplant | $ 2.75 | 100 foot row | $6.30 |

Pulling - (field)

| | | | |
|---|---|---|---|
| Onion | $ 0.50 | 2000 plants | $6.30 |
| Cabbage | $ 0.50 | 1000 plants | $6.30 |
| Strawberry | $ 2.00 | Box | $6.30 |
| Bonnie | $ 0.45 | Box of 750 | $6.30 |
| Bonnie | $ 0.55 | Box of 1000 | $6.30 |
| Bonnie Tomato | $ 0.85 | Box of 1000 | $6.30 |
| Bonnie Tomato | $ 0.65 | Box of 750 | $6.30 |

Plastic Culture

| | | | |
|---|---|---|---|
| Pulling plastic | $ 0.50 | 100 foot row | $6.30 |

Stakes

| | | | |
|---|---|---|---|
| taking up | $ 0.30 | 100 foot row | $6.30 |

Tobacco

| | | | |
|---|---|---|---|
| Cropping* | $18.00 | barn (large rack) | $6.30 |
| Putting In* | $18.00 | barn (large rack) | $6.30 |
| Taking Out* | $ 2.00 | barn (large rack) | $6.30 |
| Cropping* | $10.00 | barn (small) | $6.30 |
| Putting In* | $10.00 | barn (small) | $6.30 |
| Taking Out* | $ 6.00 | barn (small) | $6.30 |

Vidalia Onion

ioaaing *        )       $ 0.08     60 pound f..1d bag  $6.30
packing paid by the hour                              $6.30

* gang rate

Picking Cucumbers
When picking pickle cucumbers each worker will be paid a
minimum of $0.70 per 5/8 bushel bucket for all buckets
picked during the pay period and will be guaranteed the
AEWR; however all worker's earnings will be based on the
various sizes of the cucumbers picked each day by the total
crew.  Each bucket picked will include cucumbers of all
marketable sizes.  These full buckets picked by all pickers
in the crew will be dumped in a common field bin.  The
worker will be given a token or ticket for each 5/8 bushel
bucket dumped in the bin.  The cucumbers will be taken to
the grading station operated by the company that buys the
pickles grown by the employer.  The buyer's grading machine
separates by size the pickles furnished by the employer.
The employer is paid for his cucumbers by size grading; the
employer will pay the worker 40% of the total proceeds.
Each bucket under this system equals one U.S. 5/8 bushel.
At the end of the grading process the total crew's earnings
are determined for the day.  The mix rate for the day will
be determined by dividing the total number of 5/8 bushel
buckets picked by the crew into the total earnings of the
crew.  The individual worker's earnings will be determined
by the number of 5/8 bushel buckets picked that day times
the determined mix rate.  In no instance will a worker
receive less than $0.70 per 5/8 bushel bucket for each
bucket picked over the course of a pay period.  There will
be a mandatory production standard of six buckets per hour.
Any worker that does not meet the production standard may be
terminated.

Harvesting Soybean,                                 $6.30
Corn, Cotton, Wheat, Carrots, Watermelon,
Pumpkins, Greenhouse work (unless otherwise stated)
Loading,  Unloading, Stacking, Packing (unless otherwise
stated), Forklift, Scrapping, Plastic Culture - Setting,
Weeding, Tractor Driving, Irrigating and Farm & Shed
Sanitation Processes

## J.  Frequency of Pay

The payroll period shall be weekly.

## K.  Contract Impossibility

The employer will terminate the work contract of any
worker(s) whose services are no longer required for reasons
beyond the control of the employer or an Act of God.  In the

7

L.  Copy of Work Contract

A copy of the work contract and work rules will include the terms and conditions of employment specified in the regulations. A copy of such contract will be provided to the worker no later than the day on which the worker begins employment.

M.  Occupational Qualifications

The employer will not require workers to have a specified level of education or experience.

2.  Assurances

The employer agrees to abide by the assurances specified in the conditions of 20 CFR Part 655, Subpart B, including the regulations at 20 CFR 655.103.

3.  Other Conditions of Employment

A.  Termination & Discipline

The employer may terminate the worker for any lawful job-related reason and will notify the local office when/if such a termination occurs. The employer may discipline the worker including requiring the worker to leave (without pay) the field for a period determined by the foreman, unpaid suspension from employment for up to three days, or termination of employment. Workers will be terminated or disciplined for failure to follow work rules (see attachments).

B.  Injuries

Workers will be covered by Worker's Compensation Insurance or equivalent employer provided insurance for injuries arising out of and in the course of employment. Employer's proof of insurance coverage will be provided to the Regional Administrator before certification is granted.

C.  Employer Obligation If Employment Is Extended

No extension of employment beyond the period of employment specified in the job order shall relieve the employer from paying the wages already earned.

D.  Employer Notification of Changes in Employment Terms and Conditions

The employer will expeditiously notify the Atlanta USDOL Regional Administrator, ETA, by telephone immediately upon

8

## E.   Outreach Workers

~~Georgia Department of Labor~~ Outreach workers shall have
reasonable access to workers pursuant to 20 CFR 653.107 and
20 CFR 653.501.

## F.   Training

The training period for all crop activities is 2 days
starting with the first day of employment to acclimate the
worker to the physical demands of farm work and to
familiarize workers with job specifications and to
demonstrate proper harvest methods and other crop specific
issues.  After completion of the training period, workers
will be expected to meet production standards which equal to
the minimum wage specified in Section 6 of the Fair Labor
Standards Act; are to keep up with fellow workers; and not
detrimentally affect other workers productivity.  After the
training period, workers failing to meet applicable
production standards for the pay period may be terminated.

## G.   Days and Hours of Work

Workers will report to work at the designated time and place
as directed by the grower each day.  The standard work is
seven hours per day Monday-Friday and five hours on
Saturday; however, workers may be requested to work more
hours per day but will not be required to do so.  Workers
may be requested to work on federal holidays and on the
Sabbath but will not be required to do so.  Workers may
volunteer to work additional hours when work is available.

Workers should expect occasional periods of little or no
work because of weather, crop or other conditions beyond the
employer's control.  These periods can occur anytime
throughout the season.

Workers are not required to work on Sabbath or on federal
holidays which are New Year's Day, January 1; Martin Luther
King, Jr.'s birthday, the third Monday in January;
Washington's birthday, the third Monday in February;
Memorial Day, the last Monday in May; Independence Day, July
4; Labor Day, the first Monday in September; Columbus Day,
the second Monday in October; Veteran's Day, November 11;
Thanksgiving Day, the fourth Thursday in November; and
Christmas Day, December 25.

## H.   Job Specifications

Most job duties listed below require workers to work in a
bent, stooping or kneeling position.  Workers must use care
when harvesting all crops listed below not to break or
damage the plant.  All crops harvested must meet U.S.D.A.

9

Pepper  Workers will pick the developed pepper off the bush
and place in a bucket.  When bucket is full, workers will
hand bucket to another worker to place peppers into bin
boxes so that peppers are not bruised.  Workers are given a
chip for each bucket.  The worker will return to assigned
row/area and repeat process.  Worker must pick plant clean
of correct size and maturity.

Peppers are taken to packing shed for grading.  Grading
workers will remove discolored and misshaped pepper which
will be taken off belt and placed into appropriate
containers.  Peppers that are well shaped will move to the
sizer conveyor belt which separates the peppers into three
sizes:  extra large, large and medium. One person will make
boxes for graders to pack peppers.  Grading workers must be
careful not to bruise peppers when packing into boxes.  The
boxes are pushed to a worker for quality control to assure
count is correct.  Boxes are then closed and stacked into
rows.  When packing shed boxes are unloaded, labels are
placed on each box to specify size.  Then boxes are stacked
on pallets and placed in cooler with forklift.

Cucumber  Workers will pick developed cucumbers and place
into bucket.  When bucket is full, workers hand bucket to
another worker to place cucumbers into bin boxes so that
cucumbers are not bruised.  Workers are given a chip for
each bucket.  The worker will return to assigned row/area
and will repeat process.  Worker must pick plant clean of
correct size and maturity.

The bins are transported to the packing shed where they are
unloaded by drivers with a forklift.  Then the cucumbers are
put on a conveyor belt and dumped onto metering belt.
Workers are standing on the outside of the belt to inspect
and remove discolored, damaged or misshaped cucumbers.
There are four grades for cucumbers: super, 70-82 count;
select, 70-84 count; small, 95-110 count; and cartons 24
count.  Each box will be marked with a black marker before
stacking on pallets.  Boxes will be made by other workers so
that they can be filled very carefully with cucumbers.  The
boxes are placed on pallets and taken to coolers with a
forklift.

Squash  Workers will cut developed squash from plant and
place into bucket.  When bucket is full, workers hand bucket
to another worker and will be given an empty bucket.
Workers are given a chip for each bucket.  The worker will
return to assigned row/area and will repeat process.
Workers must pick plant clean of correct size and maturity.

Squash are graded and packed in field.  When the box is full
of U.S.D.A. graded squash, a sheet of vegetable tissue paper
is placed on top of full box.  Then the lid is closed and
the boxes are placed on pallets.  The full pallets are moved

10

<u>Egg Plant</u>  Workers are assigned to rows, where they will
pick the larger, developed egg plant and place into boxes.
When the box is full, workers will leave boxes in rows until
row is complete. Workers will take boxes to tractor trailer
for shipment. The worker will return to assigned row/area
and will repeat process. Worker will pick plants clean of
correct size and maturity and wrap each with tissue paper.
Worker will be furnished a pair of gloves every week.

<u>Transplanting</u> After use of transplanting machine, workers
will (in a bending and stooping position) take filled plant
trays and place individual plants from tray into holes and
cover with soil. Roots must be sufficiently put into dirt.

<u>Plastic Culture</u>  Laying plastic is done by a team of two
people sitting guiding plastic and drip irrigation tape on
the machine. Workers hold drip tape on the end tight and
tie it to the wooden handle which is hammered into the
ground. Other workers will shovel dirt on plastic. Plants
are placed in holes on the plastic where dirt is push up
around plant.

<u>Staking and Stringing Plants</u>  Workers load wooden stakes
(24" to 54" in length) on trailers and unload onto plant
beds without bruising plants. Workers will placed stakes
every 3-4 foot and stakes are hammered into the plastic
approximately 12" deep. Workers hook string on their belt
and then attach string to first stake on each row. Workers
wrap string around every stake in the row. All excess
string and broken stakes will be picked up and carried to
the end of the row to be destroyed. Worker will put string
at height specified by employer and the string must be
tight.

<u>Cleaning Plastic Fields</u>  Before cleaning plastic beds debris
will have to be removed. Workers will take the dirt out
from around the plastic and place in piles. The piles of
plastic and drip tape will be picked up and packed by a team
of two in a van/truck type automobile. No plastic material
may be left in the field.

<u>Farm Field and Shed Sanitation</u>  Workers may be responsible
for picking up trash, cleaning bathrooms, sweeping floors
and other farm and shed sanitation duties.

<u>Tobacco</u>:
<u>Greenhouse and Field Growth</u>  Workers will be responsible
for planting and   transporting greenhouse tobacco trays to
a greenhouse. Trays will be carefully placed six inches
above ground level on either water or suspended rails.
Plants will be sprayed and mowed with a hand boom
sprayer/mower. Spray will consist of certain fungicide and
insecticides. Trays will be loaded by hand and transported
by trailer to the field. Workers will be required to plant

11

plants may n 1 to be hoed and straighte. d while growing.
tobacco plants.

Harvesting    Harvest workers will move into a row of
mature tobacco plants.    Each row may be as long as 1500
feet.   The tobacco plant may be from 4 to 6 feet  tall and
spaced about 20 inches apart in each row.  Starting at the
bottom of the plant, the worker will bend over at the waist
and pick the bottom 2, 3, or 4 leaves from each plant.
Staying bent over, the worker  will move down the row of
mature tobacco repeating the above process (the bottom
leaves may be as low as  ground level).  The worker will
place the picked leaves under his arm.  Once the  worker has
gathered an armload of leaves, he will carry it to a field
sled or tobacco rack.  The leaves must be laid evenly and
neatly onto the field sled or tobacco rack.  Any fallen
leaves in the field will be picked up.  The worker will then
return to the row and repeat the process.  All workers must
be able to distinguish ripe tobacco by observing the color
of the leaves.  Care must be exercised to prevent breaking
of the plants.  Workers must be able to move along
quickly within the rows and keep in unison with the field
sled or tobacco racks.   Workers should be able to stand for
prolong periods of time to pull leaves which are from 2 to
10 inches from the ground.  Workers may be exposed to
noxious plants, insects, insecticides, and will be required
to work in dew and light rain.  Temperatures in the field
during working hours may range from 40 degrees to above 100
degrees.

Putting In Barn    Tobacco will be transported and placed
into barns with small or large racks.  Racks must be filled
evenly and neatly and hung by hoist or hand. Racks will be
handled carefully to avoid damage.

Taking Out Of Barns   Tobacco will be taken out by hand and
neatly packed on sheets weighing up to 275 pounds.  Foreign
material (leaves, weeds, suckers, etc.) will be picked out
before packing.  Sheets will be loaded onto trucks by
forklift or hand.  Empty racks will be neatly stacked by the
barn.

Pine Straw    Harvest of pine straw in natural or planted
pine stands will be raked and baled into a hand operated
bailer.  Bailers must be moved by hand throughout pine
plantations.  Pine straw bales average 30 pounds and will be
taken by hand or trailer to loading area and then loaded by
hand.  Pine straw bales left in field will be covered for
rain protection.  This harvest will occur in temperatures
from 35 to 100 degrees with harvest continuing in dew or
light rain.

Greenhouse Crops:

These crops will be planted similar to tobacco plants with
variations in planting and growing procedures.

12

Tractors will be used on these crops. Workers will be
expected to plant, harrow, fertilize, spray, plow, and
harvest these crops.

Onions:

Salad Onions   Workers will select appropriate size,
diameter, and color of salad onion to be pulled from the
ground.  These onions will be clipped on the ends, clipped
on the root, cleaned, bunched, tied, and placed in a box.
Full boxes (24 onions bundled per box) will then be loaded
on a truck or trailer.  Boxes may  require ice before
loading.

Harvesting Onions   Worker will pick up onions at ground
level and clip each root and top of onion, using supplied
shears, and put onions in bucket.  At no time will onions be
dropped from a height greater than 8 inches into bucket, or
at any    time during handling.  After two buckets are full,
approximately weighing 60 pounds, worker will pour onions
into field bag.  Worker will properly place field bags into
row as directed by employer.  Loose onions, or onions
falling out of field bags, will be picked up and placed back
into bags.

Loading Field Onions    Full field bags will be loaded and
stacked by hand onto truck or trailer.  A team of 4 people
will complete this job.  Any loose onions will be picked up
and placed into field bags.

Unloading Field Onions   Full, stacked field bags will be
unloaded at grader. A team of 3 to 4 people will complete
this job.  After unloading bags, empty bags  will be
rebagged.  Any loose onions will be placed on grader.  At no
time will onions be stepped on.

Onion Packaging    Worker will sort, size, discard culls,
weigh, and box or bag graded onions.  Workers will stand on
feet for long periods of time.  Worker will clean floors,
machinery, and building as needed.  Worker may need to hand
load boxed or bagged onions on refrigerated trucks.

Pecans   Worker will pick up pecans at ground level and put
in containers. Worker will transfer pecans into bags and
load bags on trailer.  Worker will unload bags of pecans at
a weighing location.

Carrots   Worker will hoe, dig, and bag carrots in field
using shovels and harvesting equipment. Carrots left in
field behind harvester will be dug and bagged by hand.
Field bags will be loaded on trailers or in bulk containers.
Workers will unload trailers at packaging facility.  Workers
will take care not to bruise or scar produce.  Workers will
wash, sort, size, discard culls, weigh, and bag finished
carrots into packages.

13

walk along rc   and cut melons according   size, color,
Case 9:99-cv-08598-WDF Document ... Entered on FLSD Docket 08/05/1999 Page 45 of 52
may be carried to a trailer by hand and put into bin without
damaging.

<u>Picking Cucumbers</u>    When picking pickle cucumbers each
worker will be paid a minimum of $0.70 per 5/8 bushel bucket
for all buckets picked during the pay period and will be
guaranteed the AEWR; however all worker's earnings will be
based on the various sizes of the cucumbers picked each day
by the total crew.  Each bucket picked will include
cucumbers of all marketable sizes.  These full buckets
picked by all pickers in the crew will be dumped in a common
field bin.  The worker will be given a token or ticket for
each 5/8 bushel bucket dumped in the bin.  The cucumbers
will be taken to the grading station operated by the company
that buys the pickles grown by the employer.  The buyer's
grading machine separates by size the pickles furnished by
the employer.  The employer is paid for his cucumbers by
size grading; the employer will pay the worker 40% of the
total proceeds.  Each bucket under this system equals one
U.S. 5/8 bushel.  At the end of the grading process the
total crew's earnings are determined for the day.  The mix
rate for the day will be determined by dividing the total
number of 5/8 bushel buckets picked by the crew into the
total earnings of the crew.  The individual worker's
earnings will be determined by the number of 5/8 bushel
buckets picked that day times the determined mix rate.  In
no instance will a worker receive less than $0.70 per 5/8
bushel bucket for each bucket picked over the course of a
pay period.  There will be a mandatory production standard
of six buckets per hour.  Any worker that does not meet the
production standard may be terminated.

<u>Cabbage</u> Cabbage are cut and packed in the field.  Cutters
must cut cabbage with knife furnished by supervisor, place
right number of heads in box and carry to truck.  Must also
make-up his/her own box.  Be careful/gentle with cabbage
heads.  Cut with right number of leaves.  Cut right size
head.  Cut his/her row clean of right size.  Do not cut drip
tape.

<u>Cutting Greens</u> On assigned rows with sharp knife, workers
cut greens, remove discolored defective leaves, place rubber
bands or twist ties around small bundles and pack 24 bundles
per box in a neat order.  Workers may be asked to pack loose
greens or 6 pack bundles.  Worker will make boxes and fill
them according to U.S.D.A. and customer standards.  Workers
field load full boxes on truck and stack boxes neatly in
truck.

<u>Packing</u> Packing crew consists of 20 workers and will make
box lids for packing.  Workers will unload boxes at packing
shed, inspect open boxes and fill boxes with extra bunches
if necessary.  Workers will place boxes on conveyer, greens

onto a strap..ng machine while pressing ...wn on lid, stack
Case 9:99-cv-08598-WDF Document 1 Entered on FLSD Docket 08/05/1999 Page 46 of 52
boxes onto pallets and load on truck.

Scrapping  Workers will be asked to clean discolored leaves
from greens in case of freeze or wind damage.

Greenhouse and Seed Room  Workers will put potting soil in
hopper, put trays on conveyor belt, fill trays with soil,
put filled trays on platform and stack trays on pallets.
Pallets will be placed around greenhouse.  Workers will put
filled trays in racks in greenhouse.  After some growth,
workers may need to detach some plants.  Workers will move
trays to trailer rack.

Harvesting specifications can change during the season due
to crop or market condition.  Workers will be expected to
conform to the specific instructions given for each day's
work.  Instructions and general supervision will be provided
by the farm owner, supervisor or a designated employee.

Daily individual work assignments, crew assignments and
location of work will be made by the grower or supervisor as
the needs of the farming operation dictate.  Workers may be
assigned a variety of duties in any given day and different
tasks on different days.

## I.  Referral Instructions

Upon hiring, the employment authorization status of all
workers will be verified through the INS or the Social
Security Administration, when possible.  Applicants referred
on this job order must possess legal, suitable documents  to
complete the I-9 form as required by IRCA.  Workers should
be fully apprised by the local office of the terms,
conditions and nature of employment prior to referral.
Applicant referrals can be made by contacting Charaman
Campbell, Agricultural Programs Coordinator Associate,
Georgia Department of Labor at (404) 656-3164.

## J.  Other

There are not any strikes, work stoppage, slowdowns or
interruption of operations by employees at the place where
the workers will be employed.

There are not any arrangements made with the grower for the
payment of a commission or other benefits for sales made to
the workers.

## K.  Miscellaneous

The growers who are members of the Georgia Growers
Association, Inc. are Equal Employment Opportunity
Employers.

The following rules are intended to provide guidance to workers of the standards of conduct expected of them. Violation of these rules or other lawful job-related employer requirements will be considered grounds for termination. In cases of less serious violations, workers will be penalized such as suspension from work for up to three days. Workers are expected to comply with all rules relating to discipline, attendance, work quality and quantity, and the care and maintenance of all property.

1.  Workers who perform fraudulent or sloppy work, as defined in Section H, Job Specifications, will be suspended without pay for the remainder of the workday or for up to three days in the sole judgement of the supervisor, depending on the degree of infraction, the worker's prior record and other relevant factors. Discharge of the worker may result from any subsequent offense.

2.  No use or possession of alcohol or unlawful drugs is permitted during work time or during any workday before work is completed for the day (such as during meal or break periods). Workers may not report for work under the influence of alcohol or illegal drugs. Illegal drugs may not be used or kept on the employer's property.

3.  Excessive absence or tardiness will not be permitted. Excessive absence is defined as three consecutive days of unexcused absences or five unexcused absences in a 30 day period.

4.  Workers shall maintain their living quarters to OSHA standards posted on the property and shall promptly report any problems to the employer.

5.  Workers shall cooperate with other workers assigned to such housing in maintaining common kitchen and living areas.

6.  Workers living in employer's housing assigned to bunk beds may not separate or move bunk beds.

7.  Workers living in employer's housing may not cook in sleeping rooms or any other non-kitchen areas.

8.  Workers may not drop paper, cans, bottles or other trash in fields, packing house or housing area. Trash and waste receptacles must be used.

9.  Workers may not leave the field or another assigned work areas without permission of farmer or person in charge.

10. Workers may not enter employer's premises (except their own housing) without authorization at times other than the hours the employee is schedule to work.

16

12. Workers may not abuse break periods which may be provided or take unauthorized breaks from work.

13. Workers may not deliberately restrict production.

14. Workers may not engage in horse-play, scuffling, throwing things, wasting time or loitering during work hours.

15. Workers may be discharged for fighting on the employer's premises at any time.

16. Workers may not post or remove any notices, signs or other instructions from the employer's property without specific authority from the employer.

17. Workers may be discharged if they steal from fellow workers or from the employer.

18. Workers may not falsify personnel, medical, production or other work-related records.

19. Workers may not willfully abuse or destroy any machinery, equipment, tools or other property belonging to the employer or employees.

20. After the training period, workers failing to meet applicable production standards for the pay period may be terminated.

21. Workers may not commit acts of insubordination.

22. Workers may not interrupt other workers rest/sleep period by excessive noise or commotion.

23. Workers may not have guests past 10 p.m. in the housing of the employer, except on Saturday not part 12:00 midnight. The employer reserves the right to exclude any person from visiting housing premises.  Workers may not engage in indecent, immoral or illegal conduct on the employer premises.

Case 7:99-cv-00584-WCO Document 1 Entered on FLSD Docket 08/05/1999 Page 49 of 52

the assigned duties within the job description under the direction of the employer's supervisors. This employment shall be governed by the following terms and conditions.

1. **Name, Address, Telephone Number and Place of Work of Employer:**

   Georgia Grower's Association
   2775 Ellenton-Norman Park Road
   Norman Park, Georgia 31771

2. **Name and Address of Employee at Time of Recruitment**

   _____

   _____

   _____

3. **Place of Recruitment:**

   □ _____, Ga; □ _____ Other; □ _____, Mexico

4. **Wages:**

   This is a piece rate job; however, there is a minimum guaranteed wage.

5. **Area of Employment:**

   Work will be performed in various counties in Georgia.

6. **Period of Employment:**

   The beginning date of employment is March 8, 1998 until July 31, 1998.

7. **Full Crop Commitment:**

   This is regular work for the full period of employment. The employee agrees to work for the employer seven hours on Monday-Friday and five hours on Saturday. The employee understands that if he quits or is terminated for cause prior to the completion of the employment period, he may not be eligible for rehire in the future, unless the termination is a mutual agreement between the employer and employee.

19

employer no later than on the day that work commences. The work rules are intended to provide guidance to workers of the standards of conduct expected of them. Violation of these rules or other lawful job-related employer requirements will be considered grounds for termination. In cases of less serious violations, workers will be penalized such as suspension from work without pay for up to three days. Workers are expected to comply with all rules relating to discipline, attendance, work quality and quantity, and the care and maintenance of all property.

A copy of the work rules and work agreement were provided to the employee on _____ date.

Employee:                              Employer:


_____       _____
Signature                              Signature

_____       _____
Print Name                             Print Name

_____       _____
SS# or INS#                            SS# or INS#

_____       _____
Date                                   Date

20

Georgia Growers Association, Inc.
2775 Ellenton-Norman Park Road
Norman Park, GA 31776

List of Grower Members

Grimes Farms, Inc
Rt 1 Box 69
Helena, GA 31037
Total Employees: 150
Employees Requested: 150
Counties: Wheeler, Telfair, Dodge, Lawrence, Georgia

Stanley Brothers
3309 E. 1st Street
Vidalia, GA 30474
Total Employees: 60
Employees Requested: 60
Counties: Toombs, Georgia

Southern Valley Fruit and Vegetable, Inc.
Hamilton Growers, Inc.
2775 Ellenton-Norman Park Road
Norman Park, GA 31771
Total Employees: 335
Employees Requested: 335
Counties: Colquitt, Cook, Georgia

Gibbs Patrick Farms, Inc.
165 College Ave
Omega, Georgia 31775
Total Employees: 130
Employees Requested: 130

Lewis Taylor Farms, Inc.
195 TyTy Omega Road
Tifton, Georgia 31794
Total Employees: 140
Employees Requested: 140
Counties: Tift, Worth, Colquitt, Georgia

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**CIV - FERGUSON**

## I (a) PLAINTIFFS

Rene Jolteus, Pierre Charles Ablard, Lucien Achille, Marie Andrisse Achille, Lemene Adelson, et al.

## DEFENDANTS

Georgia Growers Association, Inc., Southern Valley Fruit & Vegetable, Inc., Hamilton Growers, Inc., et al.

**MAGISTRATE JUDGE** Colquitt Co., **SNOW** Georgia

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Palm Beach
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Migrant Farmworker Justice Project
Post Office Box 2110
Belle Glade, FL 33430 (561) 996-5266

ATTORNEYS (IF KNOWN)

**(d)** CO/DIV where action arose. (circle one)
Key West, Dade, Broward, (W.P.B.), Ft. Pierce, Naples

## II. BASIS OF JURISDICTION (PLACE AN × IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN × IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Violations of the Migrant and Seasonal Agricultural Worker Protection Act, 29 USC §§ 1801, et seq., and the Wagner-Peyser Act, 29 USC §§ 49, et seq.

IVa. 5 days estimated (for both sides) to try entire case.

## V. NATURE OF SUIT (PLACE AN × IN ONE BOX ONLY)

| CONTRACT (A) | TORTS (A) | | FORFEITURE/PENALTY (B) | BANKRUPTCY (A) | OTHER STATUTES (B) |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Med Malpractice | ☐ 630 Liquor Laws | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury Product Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS (B)** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 650 Airline Regs | ☐ 820 Copyrights | ☐ 460 Deportation |
| A/B ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 690 Other | ☐ 840 Trademark | ☐ 810 Selective Service |
| A/B ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR (A)** | **SOCIAL SECURITY (B)** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | B ☐ 380 Other Personal Property Damage | B ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY (A)** | **CIVIL RIGHTS (A)** | **PRISONER PETITIONS (B)** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| B ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence 28 USC 2255 | X ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| B ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS (B)** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | **HABEAS CORPUS:** | | ☐ 870 Taxes | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 530 General | | ☐ 871 IRS–Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 535 Death Penalty | | | A/B ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 540 Mandamus & Other ☐ 550 Civil Rights | | | |

Cat. A or B

## VI. ORIGIN (PLACE AN × IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $

Check YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☒ NO

## VIII. RELATED CASE(S) (See instructions):
IF ANY

JUDGE _____ DOCKET NUMBER _____

DATE
July 30, 1999

SIGNATURE OF ATTORNEY OF RECORD

Gregory S. Schell
Florida Bar Number 287199

UNITED STATES DISTRICT COURT

710 825